**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

CHARLES E. GRIMES                                    CIVIL ACTION

VERSUS                                               NO. 12-1409

N. BURL CAIN, WARDEN                                 SECTION "N"(5)

**REPORT AND RECOMMENDATION**

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. §2254(e)(2).  For the following reasons, IT IS HEREBY RECOMMENDED that the instant petition be **DISMISSED WITH PREJUDICE.**

I.  PROCEDURAL HISTORY

Petitioner, Charles E. Grimes, is a state prisoner who is presently incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On September 18, 2007, Grimes was charged by bill of information with distribution of marijuana in violation of LSA-R.S. 40:966.[1]  On February 25, 2008, Grimes' appointed counsel filed a

---

[1]St. Rec. Vol. 1 of 5.

motion to suppress identification and motion to suppress evidence.[2]
On March 31, 2008, the district court held a hearing with respect
to both of Grimes' motions to suppress.[3]  Following said hearing
the court, finding no constitutional violations, denied Grimes
relief.[4]

The Louisiana Fifth Circuit Court of Appeal summarized the facts as
follows:

> At trial, Deputy Samuel Martin of the Jefferson
> Parish Sheriff's Office testified that on June 28, 2007,
> he was working in an undercover capacity in the
> Beechgrove area of Westwego.  On that particular day,
> Officer Martin, dressed in plain clothes, drove into this
> area in an unmarked vehicle which was equipped with a
> video camera and an audio transmitter.  The officer asked
> an individual, later identified as defendant, for "herb,"
> street slang for marijuana.  In response, defendant went
> to his white truck and retrieved an envelope.  Defendant
> gave the officer the envelope which contained green
> vegetable matter, and in exchange, the officer gave
> defendant twenty dollars in U.S. currency which had been
> photocopied.[5]  The green vegetable matter later tested
> positive for marijuana.  Deputy Martin testified that the
> approximate weight of the marijuana was 12.0 grams.
> After the transaction was complete, defendant left in the
> white truck.  The officer then broadcast defendant's
> license plate number to the surveillance team.
>     Within minutes of the drug transaction, the police
> stopped the suspect vehicle.  Detective Joe Williams, a
> narcotics supervisor in Jefferson Parish and part of the
> surveillance team, testified that once the truck was
> stopped, a field interrogation card was completed in

---

[2]Id.

[3]Id. at p. 76.

[4]Id. at p. 100.

[5]The narcotics transaction was captured on videotape which was
played for the jury.

> order to determine the suspect's identity.  Also, at some
> point during the stop, the officers retrieved currency
> from defendant's person.  However, defendant was not
> arrested at this time for the narcotics transaction with
> the undercover officer.
>
> Subsequent to defendant's stop, Detective Williams
> compiled a photographic array comprised of six suspects
> of similar appearance.  Within several hours of the
> narcotics transaction, Detective Williams showed this
> lineup to the undercover officer.  Deputy Martin
> positively identified defendant in the photographic
> lineup and in court as the individual he purchased
> marijuana from on June 28, 2007.

State v. Grimes, 16 So.3d 418 (La. App. 5th Cir. 2009); St. Rec. Vol. 1 of 5.

On April 1, 2008, Grimes proceeded to trial, by jury, in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana.[6]  After hearing the evidence, the jury found Grimes guilty of distribution of marijuana.[7]  On April 14, 2008, the trial court sentenced Grimes to 30 years incarceration.[8]  On August 21, 2008, a hearing was conducted with respect to the multiple bill filed against Grimes.[9]  After hearing the testimony, the trial court found Grimes to be a triple felony offender.[10]  The trial court vacated its earlier sentence of 30 years and sentenced Grimes to imprisonment for the rest of his natural life without

---

[6]St. Rec. Vol. 1 of 5, p. 103.

[7]St. Rec. Vol. 3 of 5, p. 222.

[8]St. Rec. Vol. 4 of 5, pp. 226 and 229.

[9]Id. at p. 231.

[10]Id. at p. 266.

benefit of parole, probation or suspension of sentence.[11]   On May 26, 2009, Grimes' conviction and sentence were affirmed on direct appeal.  State v. Grimes, 16 So.3d 418 (La. App. 5th Cir. 2009); St. Rec. Vol. 1 of 5.  On March 12, 2010, the Louisiana Supreme Court denied Grimes' writ application without opinion.  State v. Grimes, 28 So.3d 1023 (La. 2010); St. Rec. Vol. 1 of 5.

On November 23, 2010, Grimes filed a motion to correct an illegal sentence which the district court, on December 16, 2010, denied.[12]  On March 31, 2011, the Louisiana Fifth Circuit denied Grimes' writ application seeking relief in connection with the district court's denial of his motion to correct an illegal sentence.[13]  On March 23, 2012, the Louisiana Supreme Court denied Grimes's writ application without opinion.[14]

On March 22, 2011, while his motion to correct an illegal sentence was pending, Grimes filed with the district court an application for post-conviction relief.[15]  On April 5, 2011, the state district court denied Grimes post-conviction relief.[16]   On

---

[11]Id. at pp. 267-68.

[12]St. Rec. Vol. 1 of 5.

[13]Grimes v. State, No. 2011-KH-0243 (La. App. 5th Cir. 2011); St. Rec. Vol. 5 of 5.

[14]State ex rel. Grimes v. State, 84 So.3d 565 (La. 2012).

[15]St. Rec. Vol. 1 of 5.

[16]Rec. Doc. No. 3, p. 16.

4

June 16, 2011, the Louisiana Fifth Circuit likewise denied relief, finding "no error in the trial court's ruling."[17]   On April 20, 2012, the Louisiana Supreme Court denied Grimes' writ application without opinion.[18]

## II.   FEDERAL HABEAS PETITION

On May 24, 2012, Grimes filed his petition for federal habeas corpus petition relief in which he asserts the following arguments: (1) His Fourth Amendment right against unreasonable search and seizure was violated when officers stopped his truck and searched his person, removing money from his pocket; a photocopy of the seized money was improperly introduced into evidence.  (2) He was denied his constitutional right to confrontation as interpreted in Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009).[19]  (3) He was denied effective assistance of counsel.  The State filed a response in opposition to Grimes' petition conceding that Grimes' petition is  timely and that he has exhausted his state court remedies.[20]

---

[17]State ex rel. Grimes v. Cain, No. 2011-KH-0515 (La. App. 5th Cir. 2011); Rec. Doc. No. 3, p. 17.

[18]State ex rel. Grimes v. State, 85 So.3d 1259 (2012); St. Rec. Vol. 5 of 5

[19]Grimes also alleges that his right to cross-examination, a fair trial and equal protection were violated in light of the Melendez-Diaz decision.  Grimes allegation in this regard is part and parcel of his confrontation claim and will be treated as such.

[20]Rec. Doc. No. 15, p. 11.

III.  <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. §2254. The AEDPA went into effect on April 24, 1996[21] and applies to habeas petitions filed after that date.  <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir.1998)(citing <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)).  The AEDPA therefore applies to Grimes's petition which was filed on May 24, 2012.

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. <u>Nobles v. Johnson</u>, 127 F.3d 409, 419-20 (5th Cir.1997)(citing 28 U.S.C. §2254(b), (c)).

The State concedes and the Court finds that Grimes' petition is timely filed and that he has exhausted his state court remedies.

IV.  <u>STANDARDS OF MERITS REVIEW</u>

---

[21]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir.1992).

28 U.S.C. §§2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. §2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. §2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. §2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. §2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir.2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill,

210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13(2000); Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir.2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting

Woodford, 537 U.S. at 24–25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir.2006).

## V.   FOURTH AMENDMENT (CLAIM 1)

Grimes argues that his Fourth Amendment protection against an unreasonable search and seizure was violated when officials searched his pockets and seized the money he had obtained from the sale of marijuana. Correspondingly, Grimes complains that a photocopy of the seized money was improperly introduced into evidence.

Fourth Amendment violations are generally not cognizable on federal habeas review. Stone v. Powell, 428 U.S. 465 (1976). In Stone, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." Id. at 494 (footnotes omitted). The "full and fair" hearing contemplated by Stone refers to thoughtful consideration by the factfinder and at least the availability of meaningful appellate review by a higher state court. Davis v. Blackburn, 803 F.2d 807, 808 (5th Cir. 1986); O'Berry v. Wainwright, 546 F.2d 1204, 1213 (5th Cir.1977).

The United States Fifth Circuit has interpreted an "opportunity for full and fair litigation" to mean just that, "an opportunity." Caver v. Alabama, 577 F.2d 1188, 1192 (5th

Cir.1978); <u>Janecka v. Cockrell</u>, 301 F.3d 316, 320 (5th Cir.2002), <u>cert</u>. <u>denied</u>, 537 U.S. 1196 (2003).  "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, <u>Stone</u> bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." <u>Caver</u>, 577 F.2d at 1192.  Thus, it is the opportunity to present a Fourth Amendment claim to the state courts that is the basis of the <u>Stone</u> prohibition, without regard for whether that opportunity is actually exercised or is unsuccessful. <u>Janecka</u>, 301 F.3d at 320-21.  Even if a defendant fails to take advantage of the opportunity to litigate a motion to suppress or assert Fourth Amendment claims, the fact that the opportunity existed suffices for the <u>Stone</u> bar to apply.  <u>Id</u>. at 320.

The Fifth Circuit has also held that the <u>Stone</u> bar applies even in the face of error by the state court in deciding the merits of the Fourth Amendment claim.  <u>Swicegood v. Alabama</u>, 577 F.2d 1322, 1324-1325 (5th Cir.1978).  "[I]n the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way to prevent the actual litigation of fourth amendment claims on the merits, the rationale of <u>Caver</u> dictates that <u>Swicegood's</u> application of <u>Stone</u> despite a mistake in adjudicating the merits must apply with equal force to procedural mistakes that thwart the presentation of fourth amendment claims." <u>Williams v.</u>

Brown, 609 F.2d 216, 220 (5th Cir.1980) (emphasis added); Janecka, 301 F.3d at 321.

To obtain post-conviction relief in federal court, a habeas petitioner must plead and prove that the state court proceeding was inadequate.  Davis, 803 F.2d at 1372.  Grimes does not allege or demonstrate that Louisiana state courts routinely or systematically preclude litigation of a defendant's Fourth Amendment claims. Moreover, this Court has found that "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims."  Bailey v. Cain, No. 06-839, 2007 WL 1198911, at *13 (E.D.La. Apr. 20, 2007) (Duval, J.) (order adopting referenced Report and Recommendation).

Grimes does not allege that he was denied an opportunity to adjudicate his Fourth Amendment claim.  As noted above, the trial court conducted a suppression hearing.[22]  Further, the Louisiana Fifth Circuit thoroughly addressed the matter on direct appeal, first explaining Grimes' claim.

> In the first assigned error, defendant's appellate counsel argues that defendant was denied his Fourth Amendment right to privacy when officers stopped the truck he was driving, searched his person, and removed money from his pocket with the intended purpose of using copies of the bills seized as evidence against him. Counsel asserts that this error was compounded when the trial judge curtailed the defense inquiry into the stop and, even though the State failed to justify either the search or the seizure, denied the motion to suppress finding that no constitutional violation has occurred.

---

[22]See discussion supra at p. 2.

Grimes, 16 So.3d at 422.

Thereafter, the Louisiana Fifth Circuit reasoned:

Both the Fourth Amendment to the Constitution of the United States and Article I, §5 of the Louisiana Constitution protect individuals from unreasonable searches and seizures. Warrantless searches and seizures are unreasonable per se unless justified by one of the specific exceptions to the warrant requirement. State v. Roche, 05-237 (La.App. 5 Cir. 4/25/06), 928 So.2d 761, 765, writ denied, 06-1566 (La.1/8/07), 948 So.2d 120. A search incident to a lawful arrest is a well-recognized exception to a warrantless search. State v. Joseph, 02-717 (La.App. 5 Cir. 6/27/03), 850 So.2d 1049, 1051, writ denied, 04-2404 (La.6/17/05), 904 So.2d 686 (citing Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)). By statute, a peace officer may lawfully arrest a person without a warrant when he has reasonable cause to believe that the person to be arrested has committed an offense. LSA-C.Cr.P. art. 213.

In a hearing on a motion to suppress, the State bears the burden of establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703(D). The trial court's denial of a motion to suppress is afforded great weight, and it will not be set aside unless the preponderance of the evidence clearly favors suppression. In determining whether the trial court's ruling on a defendant's motion to suppress is correct, the appellate court is not limited to the evidence adduced at the suppression hearing; it may also consider the evidence presented at trial. State v. Butler, 01-907 (La.App. 5 Cir. 2/13/02), 812 So.2d 120, 124.

In the present case, Detective Joe Williams, a narcotics officer who was part of the surveillance team, was the only witness to testify at the suppression hearing. According to Williams, after the narcotics transaction was complete, the undercover officer broadcast the license plate of the vehicle involved. Pursuant to this information, Deputy Venezia, along with Detective Williams, stopped the vehicle that defendant was driving. After the vehicle was stopped, Deputy Venezia filled out a field interview card on defendant. Although the details were not brought out, Deputy Venezia apparently found a piece of crack cocaine on defendant. At this time, defendant was arrested on the crack cocaine charge and not the marijuana transaction that had just

occurred.  When Deputy Venezia transported defendant for booking in reference to the crack cocaine offense, he photocopied the currency that was on defendant's person and later gave the currency back to defendant.  After listening to this testimony, the trial judge denied the motion to suppress finding no constitutional violations.

At trial, the testimony of Samuel Martin, the undercover officer, established that he had just conducted a narcotics transaction with defendant.  When the undercover officer asked defendant for some "herb," defendant went to a truck and returned with a white envelope.  Defendant gave the officer this envelope which contained marijuana; and the officer, in exchange, gave defendant twenty dollars in U.S. currency.  As soon as defendant left the scene, the officer broadcast the license number of the vehicle that defendant was driving.  Within minutes, police stopped the suspect vehicle.

Given the totality of the circumstances, as adduced at the suppression hearing and at trial, we find no error in the trial court's denial of defendant's motion to suppress evidence.  The officers clearly had probable cause to arrest defendant since he had just committed the crime of distribution of marijuana.  Thus, the removal of currency from defendant's possession was permissible as a search incident to a lawful arrest.  It is of no consequence that defendant was not formally arrested for the marijuana offense at the time.

Grimes, 16 So.2d at 423-24 (footnote omitted) (citations omitted).

Clearly, Grimes was not denied the opportunity to adjudicate his Fourth Amendment claim.  His claim was adjudicated not only by the trial court but also by the state court of appeal.  Grimes is not entitled to habeas corpus relief based upon the alleged violation of his Fourth Amendment rights.

In a related claim, Grimes complains that a photocopy of the seized currency was improperly admitted into evidence.  It is undisputed that Deputy Venezia photocopied the currency.[23]  It is

---

[23]St. Rec. Vol. 2 of 5, p. 182.

also undisputed that Deputy Venezia did not testify at trial. Without Deputy Venezia's testimony, Grimes contends that a proper foundation was not laid for the introduction of the photograph and, therefore, the trial court erred in admitting the photograph into evidence.

To the extent Grimes argues that the photocopy of the seized currency was admitted in violation of Louisiana law, that claim is not cognizable on federal habeas review. See Swarthout v. Cooke, 131 S.Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law). Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Gonzales v. Thaler, 643 F.3d 425, 429 (5th Cir.2011); Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992). The states are free to implement procedures regarding the admission of evidence, provided those procedures do not infringe on a constitutional guarantee. Burgett v. Texas, 389 U.S. 109 (1967).

Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings under state law, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair. Lisenba v. People of the State of California, 314 U.S. 219, 236-37 (1941); Peters v. Whitley, 942 F.2d 937, 940 (5th Cir. 1991) (Habeas review is proper

14

only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right.).  The United States Court of Appeals for the Fifth Circuit has stated that the admission of prejudicial evidence is fundamentally unfair so as to justify federal habeas corpus relief only if it "played a crucial, critical, and highly significant role in the trial."  Gonzales, 643 F.3d at 430 (quotation omitted).

In this case, the evidence against Grimes was significant. Deputy Samuel Martin, the undercover officer who participated in the pertinent transaction, testified that, as depicted in the videotape of the drug transaction, he gave Grimes twenty dollars and, in exchange, Grimes gave him an envelope containing green vegetable matter which tested positive for marijuana.  Martin positively identified Grimes as the man depicted in the video from whom he purchased the marijuana.[24]  The admission of a photocopy of the twenty dollars which Martin used to purchase the marijuana from Grimes was clearly not critical to the State's case against Grimes. Grimes did not suffer a due process violation as a result of the court's admission of the photocopy.

VI.  CONFRONTATION (CLAIM 2)

Grimes argues that his constitutional right to confront his accusers was violated when a lab report, showing that the material

---

[24]St. Rec. Vol. 3 of 5, pp. 127-29.

seized from Grimes was marijuana, was admitted into evidence absent the testimony of the analyst who performed the test.  In support of his argument Grimes cites the Supreme Court's decision in Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009).

In Melendez-Diaz, "[t]he Massachusetts courts . . . admitted into evidence affidavits reporting the results of forensic analysis which showed that the material seized by the police and connected to the defendant was cocaine." Id. at 307.  Petitioner objected to the introduction of the results of the forensic analysis, arguing that he had a constitutional right to confront the analysts.  Id. at 309.  The Supreme Court agreed, finding that the admission of the results was violative of the Confrontation Clause unless the persons who performed the analysis are unavailable and petitioner had a prior opportunity to cross-examine the witness.  Id. at 309-311 (citing Crawford v. Washington, 541 U.S. 36 (2004)).  The Court, however, specified that a defendant's constitutional right in this regard is not absolute, providing:   "The right to confrontation may, of course, be waived, including by failure to object to the offending evidence . . . ." Id. at 314 n.3.

As reflected below, Grimes clearly waived his right to confrontation.

MR. AMSTUTZ [prosecutor]:
    [T]he state is going to offer a stipulation to the
defense . . . that should Christine Cocos . . . be called
to testify in this matter, one, she'd be qualified as an
expert in the field of forensic - - as a forensic
scientist; and two, she examined the narcotics in this

case; and three, prepared a scientific analysis report that the evidence examined is, in fact, marijuana.  And I would offer that stipulation to the defense.

MR. WOODS [defense counsel]:
    No objection, Your Honor [emphasis added].

THE COURT:
    You stipulate?

MR. WOODS:
    I stipulate . . . .

THE COURT [addressing the jury]:
    [B]asically, what's going on is that ordinarily witnesses come in.  We'd have to qualify this witness as an expert, and the witness would have to testify that they examined the substance and that the substance is whatever it is they say it is.  They've stipulated to that, so, you can look at this report and just consider these facts as conclusively proven . . . .[25]

Grimes' waiver in this regard was recognized by the State courts in denying him post-conviction relief.  As the state district court provided:

    The defendant now files an application for post-conviction relief, alleging that he was denied his right to confrontation, cross-examination, fair trial and equal protection.  The court finds no merit to this claim, as the defendant was not denied the right to confront [or] cross-examine any witnesses. By entering into a stipulation, defendant effectively waived his right to cross-examine witnesses and agree[d] to the premises of the evidence presented. The court finds that petitioner's reliance on Melendez-Diaz v. Massachusetts, 129 S.Ct. 2527 (2009), is misplaced.[26]

---

[25]St. Rec. Vol. 3 of 5, pp. 119-20.

[26]Rec. Doc. No. 3, p. 16.  The Louisiana Fifth Circuit found no error in the district court's decision, Grimes, No. 2011-KH-0515; Rec. Doc. No. 3, p. 17, and the Louisiana Supreme Court denied relief without opinion.  Grimes, 85 So.3d 1259; St. Rec. Vol. 5 of

The Court finds that Grimes waived his right to confront forensic scientist Christine Cocos regarding her finding that the substance seized from him by police officials was marijuana. Grimes is not entitled to relief on this claim.

Grimes also complains that he "was denied his Sixth Amendment right to confrontation when Officer Venezia, the arresting and reporting officer, was not called to testify.  Instead . . . the prosecutor and the trial court all settled for Officer Samuel Martin's testimony alone."[27]  Officer Martin was the undercover officer who paid $20 to Grimes in exchange for marijuana.  Martin did not proceed to the area where the arrest was made and where the $20 was found on Grimes' person.

Grimes's argument is without merit because the basis upon which Grimes relies is untrue.  Officer Martin was not the sole witness who testified regarding the incident at issue.  Detective Joe Williams also offered testimony at trial, stating that he was "part of the police presence that stopped [Grimes'] vehicle."[28]  Detective Williams, along with Officer Venezia, stopped Grimes and found in Grimes' possession the $20 bill used to purchase the

---

5.

[27]See attached memorandum in support of habeas corpus petition, p. 18.  Pages 18-27 were not included in the memorandum submitted by Grimes to this Court.  The Court has obtained a copy of the complete memorandum from the district attorney's office and has attached same to the instant Report and Recommendation.

[28]St. Rec. Vol. 3 of 5, pp. 161-62.

marijuana.[29]   Detective Williams testified that he saw Deputy Venezia take the money out of Grimes's pocket and was on the scene "when all of the currency was counted out in front of Mr. Grimes."[30] Thus, Grimes, by virtue of his cross-examination of Detective Williams, had ample opportunity to cross-examine an officer who witnessed and participated in his arrest and the search of his person.   Grimes suffered no violation of his right to confrontation.

VII.   <u>INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM 3)</u>

Grimes contends that he received ineffective assistance of counsel due to counsel's failure to object to the introduction of forensic scientist Christine Cocos's report without requiring Cocos's testimony.   Grimes argues that instead of objecting, counsel went along with the State's requested stipulation, thereby abandoning his right to confront his accuser, Christine Cocos.

The standard for judging performance of counsel was established by the United States Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. <u>Strickland</u>, 466 U.S. at 697 (emphasis added).   The Supreme Court first held that "the defendant

---

[29]St. Rec. Vol. 3 of 5, pp. 162-67.

[30]<u>Id</u>. at p. 182.

must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir.1999).

In deciding ineffective assistance of counsel claims, this Court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' It is not enough under Strickland, however, 'that the errors had some conceivable effect on the outcome of the proceeding.'" Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir.1994) (quoting Strickland, 466 U.S. at 693).

On habeas review, the United States Supreme Court has recently clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington v. Richter, 131 S.Ct. 770, 788 (2011). The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under §2254(d).  When §2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

"A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  Bell v. Cone, 535 U.S. 685, 697 (2002) (citing Strickland, 466 U.S. at 689).  A "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'"  Johnson v. Dretke, 394 F.3d 332, 337 (5th Cir. 2004) (quoting United States v. Jones, 287 F.3d 325, 331 (5th Cir.2002)); see also Jones, 287 F.3d at 331 ("Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed." (quotation omitted)); Geiger v. Cain, 540 F.3d 303, 309 (5th Cir.2008) (same).  Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591.

Grimes admits that counsel "did not know" he had a valid basis to object to the State's stipulation.  Grimes, however, insists that counsel "should have known that failure to demand the presence of the forensic analyst was a blatant contravention of Mr. Grimes' right to present a defense and confront his accuser."[31]

Under Strickland, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Id. at 690 (emphasis added).  Grimes's trial took place on April 1, 2008.  The Melendez-Diaz decision was not rendered until over a year later, on June 25, 2009.  Thus, regardless of the merits of the underlying constitutional claim, counsel's failure to raise an objection based upon said claim, before the law establishing the claim was pronounced, does not render counsel's performance deficient.  See Flournoy v. Small, 681 F.3d 1000, 1005-06 (9th Cir. 2012), cert. denied, 133 S.Ct. 880 (2013)(given the state of the law at the time of trial, "there was not a reasonable probability that a Confrontation Clause objection would have been sustained . . . "); Keshishian v. Small, 2012 WL 8009668, at *13 (C.D. Cal. June 22, 2012), adopted, 2013 WL 1858215 (C.D. Cal. April 30, 2013) (counsel's failure to raise an objection based upon Melendez-Diaz at the time of petitioner's 2006 trial was

---

[31]See attached memorandum in support of habeas corpus petition, p. 24.

not "outside the wide range of professionally competent assistance" as guaranteed by Strickland."); Hutchins v. S. Ryan, 2011 WL 7429398, at *33 (C.D. Cal. April 29, 2011), adopted, 2012 WL 528145 (Feb. 15 2012) (same); Dell v. United States, 710 F.3d 1267, 1281 (11th Cir. 2013) (counsel was not ineffective; "[w]e have never required counsel to anticipate future legal developments . . . "); Harrington v. United States, 689 F.3d 124, 131 (2nd Cir. 2012) ("counsel cannot be deemed constitutionally ineffective for failing to anticipate later Supreme Court rulings"); Debrow v. Cain, 286 Fed. Appx. 158, 160 (5th Cir. 2008) ("Counsel does not render ineffective assistance by failing to anticipate changes in the law.").

As the Supreme Court had not yet rendered its decision in Melendez-Diaz at the time of Grimes' trial, counsel cannot be deemed deficient for failing to raise an objection based upon same. Grimes is not entitled to relief on this claim.[32]

## RECOMMENDATION

---

[32]Grimes asserts that counsel's alleged ineffectiveness must be judged "in terms of its overall cumulative impact on the trial." See attached memorandum in support of habeas corpus petition, p. 23. However, as none of Grimes's claims have merit, that result cannot be changed simply by asserting them collectively. United States v. Hall, 455 F.3d 508, 520 (5th Cir. 2006); Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987) (with respect to the cumulation of meritless claims, "Twenty times zero equals zero.").

For the foregoing reasons, it is hereby recommended that the application for federal habeas corpus relief filed by petitioner, Charles E. Grimes, should be **DISMISSED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. §636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996)(<u>en banc</u>).[33]

New Orleans, Louisiana, this __30th__ day of ___August___, 2013.

ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE

---

[33]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.